# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JAMIE MAULDIN,                                    Case No. 1:17-cv-868

      Plaintiff,                              Barrett, J.
                                           Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Jamie Mauldin filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

In July 2014, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning on August 17, 2012 due to a combination of mental and physical impairments that Plaintiff alleges were exacerbated following a June 2012 car accident. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an ALJ.

On September 16, 2016, a hearing was conducted by video-conference. Plaintiff appeared in Cincinnati, Ohio with a non-attorney representative and gave testimony

1

before ALJ Catherine Ma, who was located in Cleveland. A vocational expert also testified. (Tr. 30-75).

Plaintiff was 42 years old on the date of her alleged disability and remained in the same "younger individual" age category at the time of the ALJ's decision. Plaintiff lives with her husband in a three-level townhouse. She has a bachelor's degree and past relevant work as a social worker, a substance abuse counselor, a school-based counselor, and as an assistant store manager. All prior work was considered "skilled."

On November 28, 2016, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 12-23). The ALJ determined that Plaintiff has severe impairments of: "affective disorder, including depression, anxiety disorders, fibromyalgia, obesity, and degenerative disc disease." (Tr. 15). Although Plaintiff had alleged that she was also disabled due to migraines, irritable bowel syndrome, macular degeneration, and partial rotator cuff tear of the right shoulder (Tr. 35),[1] the ALJ determined that none of those alleged impairments could be considered to be severe. (Tr. 15). In this judicial appeal, Plaintiff does not challenge the ALJ's findings concerning which impairments were severe, nor does she dispute the determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 16).

---

[1]At the hearing, Plaintiff included insomnia and PTSD as additional impairments. (Tr. 35, counsel's statement that "I guess insomnia would be considered a physical impairment"; see also Tr. 59, Plaintiff's testimony about counseling "in the past" for PTSD). Although the ALJ's opinion discusses Plaintiff's complaints of drowsiness, (Tr. 19), the opinion does not specifically reference insomnia or PTSD. However, Plaintiff's Statement of Errors does not allege any specific error concerning insomnia or PTSD.

The ALJ agreed that Plaintiff can no longer perform her prior skilled work due to her mental limitations, but found that she retains the residual functional capacity ("RFC") to perform a restricted range of medium unskilled work, subject to the following limitations:

> [S]he must never climb ladders, ropes or scaffolds. The claimant can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She must never be exposed to hazards. The claimant is limited to performing simple and routine tasks and is limited to routine workplace changes. She can have occasional interaction with the public.

(Tr. 23). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the representative jobs of kitchen helper, laundry worker, and hand packager. (Tr. 23). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ's finding that she can engage in sustained work activity is not supported by substantial evidence in the record as a whole.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

3

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant

4

can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

**B.   Substantial Evidence Supports the ALJ's Findings**

The ALJ's non-disability determination must stand if it is supported by substantial evidence in the record as a whole*.  See Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In addition, the ALJ alone is responsible for determining what limitations to include in an individual's residual functional capacity.  *See* 20 C.F.R. § 404.1546(c).  If the hypothetical RFC formulated by the ALJ is supported by the record, a vocational expert's testimony that an individual can engage in a substantial number of jobs will constitute substantial evidence to support the non-disability determination.  *Varley v. Sec'y of HHS*, 820 F.2d 777 (6th Cir. 1987).

In her Statement of Errors, Plaintiff does not challenge any specific mental or physical limitation included by the ALJ in the determination of her RFC.  Instead, she points to testimony by the vocational expert ("VE") that an individual with the hypothetical limitations determined by the ALJ in this case would be precluded from all unskilled work if she were "off-task" more than 10% of the workday, and/or if she were absent from work more than 1 day per month.   (Tr. 73).  On the record presented, however, no such limitations were included in Plaintiff's RFC.  Plaintiff broadly argues that the ALJ committed reversible error by finding that she can engage in <u>any</u> full-time work for 8 hours

5

a day, or for 5 days every week, on a sustained, or "regular and continuing" basis. Plaintiff's argument strongly implies that the ALJ should have included work-preclusive limitations concerning absenteeism and/or Plaintiff's inability to engage in work for a full 8 hours per day on a consistent basis. Plaintiff asserts that the ALJ "ignored significant evidence" that supports her claim that she cannot sustain fulltime work.

In support of her claim, Plaintiff relies heavily on her own testimony along with select medical records. Prior to turning to the evidence on which Plaintiff relies, the undersigned first reviews the evidence relied upon by the ALJ in formulating the RFC. Notably, no treating or examining physicians or psychologists offered any medical opinions suggesting that Plaintiff was disabled from all work, or for that matter, that she had any specific functional limitations at all. In the absence of other medical opinion evidence, the ALJ based her RFC determination in large part upon the opinions of two state agency reviewing physicians, Drs. Gedmark and Reed, giving their opinions "great weight." (Tr. 21). The ALJ also gave "great weight" to the opinions of the consulting psychologists, Drs. Gonzalez and Cutler. (Tr. 19). The ALJ's reliance on these medical opinions to help formulate Plaintiff's RFC reflects no error. Because the evaluations are the only medical opinions of record, they serve as the best evidence of Plaintiff's work-related abilities and limitations. *Accord Watts v. Com'r of Soc. Sec.*, 179 Fed. Appx. 290, 294 (6th Cir. 2006).

None of the four agency consultants opined that Plaintiff would be excessively absent, that she would be off-task for greater than 10% of the workday, or that she could not engage in work on a regular and continuing basis. To the contrary, both Drs. Gedmark and Reed opined that Plaintiff could engage in medium work with postural limitations and other non-exertional limitations. The ALJ accepted their limitations as adequately

6

encompassing the Plaintiff's chronic physical pain complaints, including some tenderness to palpitation of her back, "at times a muscle spasm in lumbar region, and some reduced range of motion of her lumbar spine from her degenerative disc disease and fibromyalgia." (Tr. 19, 20). The ALJ also took Plaintiff's obesity into account in formulating the RFC,[2] noting that she should not be exposed to hazards due to her obesity and "because she would unable to protect herself adequately due to her pain." (Tr. 20). The ALJ declined to further limit Plaintiff because "her allegations of impairments of a disabling severity are not consistent with the record, including the aforementioned normal findings such as a generally normal gait, strength, [and] coordination." (*Id.*) The ALJ emphasized that "the record reflects limited treatment for the allegedly constant and disabling pain and otherwise normal clinical findings." (Tr. 19).

The agency psychologists also opined that Plaintiff was able to engage in sustained work activity. (Tr. 124-125, indicating that Plaintiff is "not significantly limited" in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"). In accepting most of their opinions and rejecting the work-preclusive limitations to which Plaintiff testified,[3] the ALJ relied on mental health records that included frequent reports of "a euthymic mood and activities of daily living…such as driving, performing household chores and personal care, and international travel." (Tr. 19, 85-91, 119-126). The ALJ noted that Plaintiff exhibits only mild restrictions in her activities of daily living, and reported that upon waking, she eats breakfast, checks emails, writes letters to pen pals, performs household chores, and

---

[2]In September 2015, Plaintiff had reported that she had lost 17 pounds after attending a weight loss clinic for two months.
[3]Although the agency consultants found that Plaintiff had only "mild" difficulties in maintaining social functioning, the ALJ found "moderate" difficulties in that area of the Paragraph B criteria.

prepares lunch and dinner. (Tr. 17). She does not need reminders for personal care. (*Id.*) Elsewhere in her opinion, the ALJ noted that Plaintiff spends time with others at family dinners, with friends, and uses social media, goes grocery shopping, uses the library and enjoys reading, and is fairly involved in her church community. (Tr. 57-58). For example, she took a two-week volunteer work trip to India with her church, during which she enjoyed an underground railroad tour, and she took another trip to New Orleans. (Tr. 17 citing Tr. 661 and 889; *see also* Tr. 20, 63). She also reported tutoring at church. (Tr. 20).

In finding Plaintiff capable of sustaining full-time work, the ALJ unequivocally rejected much of Plaintiff's testimony that pain from multiple impairments precludes sustained work activity. Plaintiff testified at the hearing that she does not "have the stamina" to work for eight hours based on the combination of her migraines, fibromyalgia, arthritis, depression, and "all the different things." (Tr. 49). She testified that her chronic pain from neck and back issues, migraines, and IBS would cause her to be frequently absent from work. (Tr. 49-50, 52). She testified that she cannot sit "for extended periods because of the arthritis and the cervical stenosis, the degenerative disc disease," and that she has a lot of back and neck pain, as well as difficulty with her "hips and my knees."[4] (Tr. 50). In addition, she testified that fibromyalgia causes her pain throughout her body. (*Id.*)

Because no medical opinions support her testimony, Plaintiff relies on discrete medical records, which she admits reflect "scattered medical treatment," to argue that her impairments resulted in a disabling level of pain and would have caused excessive

---

[4]Plaintiff testified that she has bursitis in both hips and arthritis. (Tr. 58). The ALJ found degenerative disc disease to be a severe impairment but did not specifically discuss bursitis or arthritis. Plaintiff does not refer to hip or knee pain, or assert any error relating to bursitis or arthritis in this appeal.

absenteeism. (Doc. 9 at 12). There are two problems with Plaintiff's argument. First, the fact that substantial evidence may be found to support a different determination is not cause for reversal of a non-disability determination, so long as substantial evidence also supports the ALJ's decision. Second, none of the evidence relied upon by Plaintiff is sufficient to undermine the substantial evidence that supports the ALJ's determination in this case.

In addition to determining that Plaintiff's migraines, macular degeneration, and IBS could not be considered to be "severe" impairments, the ALJ made an adverse credibility determination regarding Plaintiff's overall complaints of disabling pain. (Tr. 19). The ALJ contrasted Plaintiff's subjective complaints with multiple records that reflected "normal findings." (*Id.*) Defendant asserts that Plaintiff has waived any challenge to the adverse credibility finding by failing to specifically challenge that finding. *See generally, Swain v. Com'r of Soc. Sec.*, 379 Fed. Appx. 512, 517-518 (6th Cir. 2010) (a failure to raise a claim on the merits constitutes waiver). Considering Plaintiff's focus on select medical records and failure to include the word "credibility" anywhere in her argument, (s*ee* Doc. 9 at 10-12), Defendant's argument has some appeal.

In her reply memorandum, however, Plaintiff maintains that no waiver applies. She contends that her broader argument that the ALJ "ignored" certain evidence in favor of her claim encompasses a more specific challenge to the ALJ's adverse credibility determination. In her Statement of Errors, she cites both to her own testimony that she cannot sustain full-time work, and to work history and medical records that she believes support that testimony.

An issue cannot be presented for the first time in a reply memorandum. Plaintiff's attempt to reframe her initial claim in her reply memorandum as encompassing a

9

challenge to the adverse credibility determination is not particularly persuasive. However, giving Plaintiff the benefit of the doubt on this issue, I find no reversible error.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Comm'r of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001).

It is true that subjective complaints of pain may support a claim for disability. *See Duncan v. Sec'y of HHS,* 801 F.2d 847, 852 (6th Cir. 1986). However, in cases in which complaints of disabling pain are not well-supported by medical evidence, the credibility of the claimant is often critical. *See Tyra v. Sec'y of HHS,* 896 F.2d 1024, 1030 (6th Cir. 1990) (Though claimant's physicians consistently reported Tyra's subjective complaints of pain, he had no underlying neurological abnormalities, atrophy or proportionate loss of sensory and reflex reactions."); *Daniels v. Com'r of Soc. Sec.,* 2011 WL 2110145 at *4 (S.D. Ohio May 25, 2011) (normal neurological findings or other results of objective testing may be considered in determining credibility of subjective complaints, citing *Cross v. Com'r of Soc. Sec.,* 373 F.Supp.2d 724, 732 (N.D. Ohio 2005)). As other courts have noted, many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230–231 (6th Cir. 1990) (affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling).

Here, the ALJ discussed Plaintiff's allegations that she could not work due to her physical pain and lack of stamina, her allegations of contact pain, and that her conditions

caused difficulty in sitting for extended periods and lifting restrictions to 10 pounds or less. (Tr. 18). The ALJ also expressly considered Plaintiff's testimony that her mental impairments are disabling because her depression causes her to stay in bed for most of the day and she requires two naps for 2 hours at a time each day. (*Id.*)  Although the records reflect that most of Plaintiff's conditions existed prior to her alleged onset of disability when she was still working full-time, the ALJ also considered Plaintiff's testimony that the "progression" of those conditions caused her to be disabled after her car accident. (*See generally* Tr. 64-65, Plaintiff's testimony concerning her degenerative joint disease, bone spurring in her neck and spine and arthritis).

In this judicial appeal, Plaintiff protests that in assessing her claim, the ALJ over-relied upon her ability to perform daily activities, which is not equivalent to the ability to sustain full-time work. *See Rogers v. Com'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).  However, "if disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken." *Id.* (citing 20 C.F.R. § 404.1529(c)(3)).  Here, the ALJ did not simply point to a few daily activities to discount Plaintiff's credibility but relied on numerous inconsistencies, including between the record and Plaintiff's testimony that her migraines, IBS, macular degeneration and a partial tear of her rotator cuff all contributed significantly to disability. (Tr. 15).

Despite failing to assert error in the ALJ's Step 2 determination that her migraines were not a severe impairment, Plaintiff relies on treatment notes from her treating neurologist, Dr. John Kelly, to argue that the "non-severe" migraines still contribute to her inability to sustain fulltime work.  Dr. Kelly's records reflect that Plaintiff reported that her migraines began more than 20 years ago.  Many of the notes on which Plaintiff relies

11

predate her disability onset date and do not appear to support the level of absenteeism that Plaintiff alleges.[5] The number of days that Plaintiff experiences headache is not necessarily equivalent to the number of days she would be absent from work, even if the reported number of headaches were to be credited. For example, at her January 2011 initial consultation with Dr. Kelly, prior to *any* treatment, Plaintiff reported that she misses some work "at least one or two times per month." (Tr. 428; *see also* Tr. 441 "she is sometimes incapacitated [and] she sometimes misses work"; Tr. 443, reporting more than 15 migraines per month in March 2012 but without any notation of increase in missed work). In July 2011, Dr. Kelly ordered an MRI of the brain that showed "some very minimal white matter changes, commonly associated with migraine though…also seen in the normal population" (Tr. 431).

On May 4, 2012, Dr. Kelly prescribed Botox injections, which Plaintiff reported were effective for a period of about ten weeks until July 18. (Tr. 447, 451). On August 23, 2012, she was administered another Botox injection and was advised to return in 10 weeks for a follow-up injection. (Tr. 454). Consistent with 2011 records, the August 2012 record reiterated that before treatment, Plaintiff's frequent (15 days per month) headaches caused her to miss work "at least one or two times per month." (Tr. 451).[6] A follow-up October 2012 MRI study brain showed *no changes* from the 2011 study, including no enhancing brain lesions or new areas of abnormal brain signals attributed to migraines or anything else. (Tr. 19, 407, 463). Dr. Kelly's records reflect continued

---

[5]Plaintiff relies most heavily on her own testimony to support her claim of excessive absenteeism, but the ALJ was permitted to review that testimony through the lens of her adverse credibility finding. (*See* Tr. 44, 61-62, 287).

[6]The reference in the records appears to have been carried over from the initial consultation record in which Plaintiff reported her medical history. Dr. Kelly provided no opinions concerning any functional limitations allegedly caused by the migraines, including but not limited to absenteeism.

medication therapy and Botox injections at ten-week intervals, which was deemed to provide significant improvement in 2013. (*See e.g.*, Tr. 477, 481, noting headaches "significantly improved"). At the hearing, Plaintiff testified that she continues to experience at least 10 migraines a month, but that her prescription medication, Maxalt, is helpful and can stop the migraines from occurring or shorten them. (Tr. 51).

Based on the record as a whole, the ALJ reasonably determined that "the claimant had medication treatment, including Imitrex, for her migraines without further intervention." (Tr. 15). In addition to treatment records and imaging studies, the ALJ based her "non-severe" finding at Step 2 on the fact that in many medical records, Plaintiff expressly denied suffering from headaches. (*Id.*)

In addition to discrepancies between the medical records and Plaintiff's testimony about her migraines, the ALJ found further discrepancies between Plaintiff's testimony about her IBS and macular degeneration and the record of treatment, again finding at Step 2 that neither condition could be considered to be severe.

> As for her irritable bowel syndrome, the record reflects only routine and conservative treatment, including omeprazole… In addition, her physical examinations generally showed normal bowel sounds with no tenderness or distension of her abdomen…. Therefore, the claimant's irritable bowel syndrome is not a severe impairment. As for her macular degeneration, the claimant's visual acuity was 20/20 in both eyes with correction…. She had no treatment for this condition beyond glasses…. In addition, at her most recent ophthalmology appointment, the claimant reported that her vision was good with correction.

(Tr. 15, internal citations omitted). Consistent with the ALJ's analysis, at the hearing, Plaintiff testified that she visits her eye doctor only annually and testified that problems with her vision cause her difficulty only with driving at night. (Tr. 54, 63).

Additionally, the ALJ found that her status post non-union of the distal segment of her sacrum and her right shoulder partial rotator cuff tear could not be considered to be

13

severe impairments. Imaging studies immediately after her car accident were negative but months later, a provider discovered a bone fragment from her sacrum. (Tr. 489). A month after the May 6, 2013 surgery to remove the bone fragment, Plaintiff reported doing well and not having any more pain, and the record reflected no further treatment. (Tr. 15; Tr. 490; see also Tr. 493). Although in July 2013 she reported some continued pain with prolonged sitting, (Tr. 596), that isolated report does not undermine the substantial evidence that supports the ALJ's analysis of her limitations from this impairment. As for her shoulder, an x-ray showed no joint or soft tissue abnormality. (*Id*). Although further follow-up with an orthopedist was recommended, the record showed no further treatment for her shoulder. (Tr. 15). Plaintiff treats her shoulder pain only with an over-the-counter anti-inflammatory. (Tr. 67).

Finally, Plaintiff has had only conservative treatment for back and neck pain. In contrast to Plaintiff's testimony about disabling pain from arthritis and degenerative disc disease, imaging studies showed "nothing terribly impressive" and only minimal discogenic changes, with no nerve compression, lumbar canal stenosis or disc herniation in her lumbar spine, and only minimal degenerative changes in her cervical spine. (Tr. 459; Tr. 19; *see also* Tr. 401). In June 2013, Plaintiff underwent a bone densitometry of her lumbar spine, which also was normal. (Tr. 19, 622). She had no muscle spasms or tenderness to palpitation of her back or otherwise. (Tr. 19, 457-470, 489, 761, 946). Her muscle and motor strength were mostly normal. (Tr. 19, 453-480, 489, 577, 602, 680, 906, 922, 966). Her sensation and reflexes were also usually normal. (Tr. 19, 453-480, 489, 599, 922, 966). A September 2014 imaging study of her cervical spine showed some progression, but still characterized degenerative changes as "mild" (Tr. 544).

14

At the hearing Plaintiff testified that she once tried going to a chiropractor who recommended a TENs unit for her back and neck pain, but that she did not purchase a unit because her insurance would not cover the cost. She testified that she generally takes only over the counter medication for her back and neck pain. (Tr. 52-53). She used to take prescription pain medication but her doctors no longer prescribe that. (Tr. 53). In response to her representative's query, she also testified that other than OTC medication, she has not had anything done for her neck or back pain for "a couple years." (Tr. 67-68). In view of the record as a whole including Plaintiff's conservative treatment, the ALJ's decision to discount Plaintiff's complaints of disabling pain is substantially supported. *Accord Kincaid v. Com'r of Soc. Sec.*, 2017 WL 4334194 (S.D. Ohio Sept. 30, 2017) (holding that the ALJ's discounting of subjective pain complaints based upon her relatively conservative treatment and daily activities was supported by substantial evidence).

On appeal, Plaintiff points to records dated in August and October 2012, in which she reported increased diarrhea and back pain after her car accident. (Tr. 455, 459). Plaintiff also cites to a November 2014 MRI of her cervical spine that, despite some normal and mild findings, also showed at C5-C6 "broad-based diffuse disc bulge with associated spur present. Moderate left and right foraminal narrowing for the existing C5 nerve roots present." (Tr. 545; *see also* Tr. 553, reporting neck pain). In her reply memorandum, Plaintiff cites additional records in support of her contention that "significant evidence" proves consistent efforts to obtain treatment and relief from chronic pain. (*See* Doc. 14 at 2, collecting records). The undersigned has carefully reviewed all cited records but concludes that none support functional limitations at a disabling level.[7]

---

[7]The undersigned was unable to locate the record cited as Tr. 993; the last page of the administrative record filed in this Court is Tr. 983.

Moreover, none undermine the substantial evidence that supports the ALJ's credibility determination.

In one final attempt to refute the ALJ's RFC determination and adverse credibility determination concerning the extent of her physical limitations, Plaintiff points to treatment records from 2013, when she alleges her fibromyalgia symptoms "began to significantly impact her daily life." (Doc. 9 at 11-12). As with her other impairments, however, Plaintiff's reliance on the selected records does not require reversal.

The consulting physicians on whom the ALJ relied considered Plaintiff's fibromyalgia records, as did the ALJ herself. This is not a case in which any treating physician has opined that Plaintiff's fibromyalgia is so severe that it causes disabling limitations. *Contrast Swaim v. Com'r of Soc. Sec.*, 297 F.Supp.2d 986, 990-993 (N.D. Ohio 2003) and *Rogers v. Com'r of Soc. Sec.*, 486 F.3d 234, 245 (6th Cir. 2007) (holding it was error for an ALJ to fail to give controlling weight to the opinion of a claimant's treating physician concerning pain limitations caused by fibromyalgia). In *Swaim,* the court emphasized that analysis of the severity of a fibromyalgia sufferer's pain can be "difficult," and "places a premium...on the assessment of the claimant's credibility." *Id.* at 990. Neither *Swaim* nor *Rogers* suggest that an ALJ should forego a credibility analysis and accept a plaintiff's allegations of a disabling level of pain without critical review. To the contrary, *Swaim* states that "[a]lthough the treating physician's assessment can provide substantial input into this credibility determination, ultimately, the ALJ must decide...if the claimant's pain is so severe as to impose limitations rendering [her] disabled." *Id.* In fact, most people with fibromyalgia suffer less than disabling limitations. *See Vance v. Com'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008).

In addition to the substantially supported analysis of Plaintiff's physical limitations, the ALJ pointed out many inconsistencies between Plaintiff's claim that her mental impairments were disabling and the record. At the hearing, Plaintiff testified that she has suffered from depression "for probably 25 years or more," long before her alleged onset date. (Tr. 56). The ALJ highlighted the fact that although Plaintiff was engaged in therapy for her mental conditions *prior* to her alleged onset date at a time she was still working full-time, she discontinued therapy shortly *after* her onset date, from August 2012 until July 2014. Discontinuing treatment undermined her claim that her depression and anxiety was disabling throughout that period. (Tr. 20, 222, 224, 632-635).

To counter this evidence, Plaintiff argues that mental impairments are prone to periods of temporary remission, and that she continued taking medications for her mental impairments that had been prescribed by her primary care physician. However, a plaintiff's contrary view of the evidence does not support reversal where the ALJ's analysis is substantially supported. Plaintiff's records consistently showed good eye contact, good judgment and insight, and a "good" memory. (Tr. 20). Summarizing, the ALJ concluded that despite symptoms that waxed and waned, over time Plaintiff's symptoms "somewhat improved." (Tr. 20, citing records). The ALJ did not ignore but specifically acknowledged that Plaintiff's mental health records referenced blunted or anxious affect and a depressed mood on many occasions, which supported RFC limitation to "performing simple and routine tasks" with only "routine workplace changes" and "occasional interaction with the public." (Tr. 18).

Plaintiff also cites to discrete mental health records, such as a March 2014 report of an increase in her depression and anxiety-related symptoms. (Tr. 508, 632). At the time, her Global Assessment of Functioning ("GAF") score was 50. Her therapist noted

17

she fluctuated between having insomnia and hypersomnia. (Tr. 643). However, the ALJ reasonably noted that GAF scores are not dispositive but reflect no more than a snapshot of Plaintiff's functioning at that time, including consideration of housing difficulties not pertinent to the analysis of social security disability. (Tr. 21). Plaintiff's GAF score of 50 remained the same despite the fact that she was able to plan and go on her two-week international trip to India, while "increasing social contact with old and new friends." (Tr. 21). The undersigned finds no error in the ALJ's decision to give Plaintiff's GAF scores little weight on the record presented. *See generally Lee v. Com'r of Soc. Sec.*, 529 Fed. Appx. 706, 716 (6th Cir. 2013). Likewise, the undersigned finds no error in the ALJ's rejection of disabling mental limitations after determining that Plaintiff's "allegations of a disabling severity are not consistent with the record, including the aforementioned normal findings such as a generally normal… mood, judgment, insight, and memory." (Tr. 20). The ALJ fairly reasoned that the mental limitations as determined were sufficient to account for Plaintiff's "pain, any leftover drowsiness from [pain medication] taken the night before, and her depressed moods, which would decrease her concentration and ability to adapt." (*Id.*)

Plaintiff briefly argues that her strong work history until May 2012 favored the acceptance of her subjective complaints. Plaintiff testified that she continues to work part-time to provide care for her 25-year-old nephew, who has cerebral palsy and an intellectual disability. (Tr. 20, 38-39). Among the care she provides are shopping and helping him with letters and numbers. She works a flexible schedule, typically only 4-6 hours per week, and rarely up to 15 hours. (Tr. 39-40). She testified that the only reason she can work at all is because the job is for a relative and is flexible, and that there are some weeks where she is unable to work at all. (Tr. 39-40, 42). While it is true that a

18

strong work history is one factor that can support a favorable credibility determination, Plaintiff's work history did not require the ALJ to disregard the ample evidence in the record as a whole that supported the ALJ's adverse determination.

### III. Conclusion and Recommendation

In conclusion, I find no error in the ALJ's assessment of Plaintiff's credibility, or in her overall non-disability determination. "Discretion is vested in the ALJ to weigh all the evidence," and the ALJ here did not abuse that discretion. *Collins v. Com'r of Soc. Sec.*, 347 Fed. Appx. 663, 668 (6th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff's argument that the ALJ erred in this case based upon what she alleges is substantial evidence to support a different conclusion does not support reversal, because there is a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d at 773.

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

                                           */s Stephanie K. Bowman*
                                           Stephanie K. Bowman
                                           United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JAMIE MAULDIN, | Case No. 1:17-cv-868 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).